UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRANDON S. LAVERGNE (#424229)

VERSUS

RANDY LAVESPERE, ET AL.

CIVIL ACTION

NO. 21-344-JWD-RLB

**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on April 17, 2024.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BRANDON S. LAVERGNE (#424229)

VERSUS

RANDY LAVESPERE, ET AL.

CIVIL ACTION

NO. 21-344-JWD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the cross Motions for Summary Judgment filed on behalf of Plaintiff (R. Doc. 115) and remaining Defendants Brady Baudin and Randy Lavespere (R. Doc. 118). Defendants have filed an Opposition. *See* R. Doc. 117.

The *pro se* Plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), filed this proceeding pursuant to 42 U.S.C. § 1983, complaining that his constitutional rights were violated due deliberate indifference to his serious medical needs. Plaintiff's remaining claims are for monetary damages against defendants Brady Baudin and Randy Lavespere in their individual capacities.[1]

Plaintiff moves for summary judgment relying upon the pleadings, a Statement of Disputed Facts, a Statement of Undisputed Facts, his declarations titled, "Affidavit A," "Affidavit B," and "Affidavit C," excerpts of the plaintiff's medical records, excerpts of administrative remedy procedure number LSP-2019-2018, articles from *Web*MD titled, "Mild Sleep Apnea May Raise Heart Risk" and "Sleep Apnea and Depression: 3 Facts You Should Know," excerpts of articles from www.hopkinsmedicine.org, and an excerpt of an article from WebMD titled, "11 Ways Sleep Apnea Can Hurt Your Health." Defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, the Affidavit of Dr.

---

[1] *See* R. Doc. 61 dismissing (1) the Plaintiff's claim for monetary damages asserted against the Defendants in their official capacities; (2) the Plaintiff's claim for injunctive relief; (3) the Plaintiff's claims against Defendants Cindy Park and Jacob Johnson in their entirety; and (4) the Plaintiff's claim asserted against Defendant Dr. Randy Lavespere for failure to respond to informal complaints.

Lavespere, the Affidavit of Brady Baudin, a certified copy of the plaintiff's medical records, and a copy of administrative remedy procedure number LSP-2019-2018.

## Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett, supra*, 477 U.S. at 323.

Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp., supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-

moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## Plaintiff's Allegations

In his Complaint, as supplemented, Plaintiff alleges the following: After complaining for several years about sleep apnea, a sleep study was ordered in 2018. The plaintiff was seen by defendant Brady Baudin for a pre-study checkup, but a sleep study was not scheduled. In October of 2018, the plaintiff was placed in CCR which resulted in him gaining 40 pounds, which in turn worsened his sleep apnea. A sleep study was again ordered in 2019 but was never scheduled. The plaintiff filed a grievance which was granted by defendant Johnson in 2020. The plaintiff was then seen by defendant Baudin for another pre-study checkup, but a sleep study was not scheduled. The plaintiff was informed by Dr. Hal MacMurdo that, for an unknown reason, defendant Dr. Lavespere was blocking the plaintiff's sleep study.

On April 15, 2021, the plaintiff was told by defendant Park that she would make sure his sleep study was completed within two weeks. She called defendant Baudin but a sleep study was never scheduled. What defendant Park was trying to schedule was not an actual sleep study at a sleep center, but rather someone simply watching the plaintiff sleep.

Due to sleep apnea, the plaintiff would wake up coughing and gasping for air, and his vision is blurry. His heart rate and blood pressure increased. The plaintiff's memory and mental focus were also affected.

The plaintiff wrote several letters to defendant Dr. Lavespere and defendant Johnson asking for medical assistance. The plaintiff previously filed suit regarding a former warden's failure to allow the plaintiff to have a CPAP (continuous positive airway pressure) machine. Defendant Dr. Lavespere testified at the trial, and the jury found that the plaintiff's Eighth

Amendment rights had been violated. The plaintiff asserts that it should have been clear to defendant Lavespere that denial of a sleep study is also a violation of the plaintiff's Eighth Amendment rights.

The plaintiff did not undergo a sleep study until January of 2022. The study was conducted by defendant Baudin, and the plaintiff wore a harness that measured his sleep position, breathing, heart rate, and oxygen levels while sleeping. Defendant Baudin informed the plaintiff that this method had been available for five years. On February 10, 2022, the plaintiff's results showed that he has obstructive sleep apnea. Defendant Baudin gave the plaintiff a VPAP (variable positive airway pressure) machine, which the plaintiff was able to wear and then sleep normally.

## Qualified Immunity

Defendants asserts, *inter alia*, that they are entitled to qualified immunity in connection with Plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*.

Undertaking the qualified immunity analysis, the Court finds that Defendants' motion should be granted. Defendants are entitled to summary judgment.

### Deliberate Indifference

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

*Defendant Dr. Lavespere*

With regards to defendant Dr. Lavespere, the plaintiff asserts in his Declaration that Dr. Hal McMurdo told the plaintiff that defendant Dr. Lavespere was stopping the plaintiff from getting a sleep study after 2014. *See* R. Doc. 115-3. What Dr. McMurdo allegedly told the plaintiff is hearsay and is not competent summary judgment evidence. "[H]earsay cannot create a genuine issue of material fact" on a summary judgment motion. *Porter v. Lear*, 751 F. App'x

422, 430 (5th Cir. 2018). *See also Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial."); and *Goodwin v. Johnson,* 132 F.3d 162, 168 (5th Cir. 1997) (hearsay statements in affidavit submitted in opposition to motion for summary judgment were "incompetent summary judgment evidence").

Nor does the record support the plaintiff's allegation that defendant Dr. Lavespere was somehow blocking the plaintiff's sleep study. A review of the record reveals that a referral to a respiratory therapist for a sleep study was ordered in January of 2018 and the consultation form was completed in February of 2018. In the meantime, the plaintiff was seen by a different provider who doubted that the plaintiff had sleep apnea and advised him to exercise and lose weight. *See* R. Doc. 119-4, p. 11, 13, and 14. The plaintiff did not complain about symptoms of sleep apnea again until March 13, 2019, by which time defendant Dr. Lavespere was on leave due to cancer treatment. *See* R. Doc. 119-3, p. 273, and R. Doc. 121. On April 10, 2019, the plaintiff was seen by a different provider who recommended a sleep study, but upon discussing the matter with defendant Baudin learned that the plaintiff was already on the list for a sleep study. *See* R. Doc. 119-3, p. 272.

The plaintiff did not complain of sleep apnea again until October 1, 2019. *See* R. Doc. 119-3, p. 268. On January 31, 2020, the plaintiff complained that a sleep study had been ordered almost a year earlier and had not been conducted. *See* R. Doc. 119-3, p. 266. The provider who followed up with the plaintiff checked on the status of the sleep study on March 3, 2020, and noted that the plaintiff was on the list per defendant Baudin. *See* R. Doc. 119-3, p. 265.

It is important to note that around this time COVID-19 and its related restrictions became a factor in daily life and in the scheduling of medical services. While COVID-19 may not have

accounted for the entire delay, the Court takes judicial notice of COVID-related restrictions and how they may have affected the scheduling of medical procedures.

On October 8, 2020, the provider ordered a sleep study in the Skilled Nursing Unit at the prison. *See* R. Doc. 119-3, p. 261. By January 25, 2021, defendant Dr. Lavespere was no longer the medical director at LSP and had only limited knowledge of the day-to-day activities at LSP. *See* R. Doc. 121. On April 15, 2021, the provider noted that they had spoken to defendant Baudin and that they would try to do the sleep study in the skilled nursing unit the following week. *See* Doc. 119-3, p. 254.

On May 13, 2021, the plaintiff was referred to an ENT for obstructive sleep apnea. *See* R. Doc. 119-3, p. 248. The plaintiff was seen by an ENT on July 1, 2021, who recommended a sleep study and a CPAP machine. It was noted that defendant Dr. Lavespere stated that, per defendant Baudin, a sleep study machine/test would be ordered. The sleep study and an endoscopy were okayed on August 18, 2021. *See* R. Doc. 119-3, p. 244.

The endoscopy was performed on October 11, 2021, and Dr. Bolk recommended a sleep study and, if the plaintiff had obstructive sleep apnea, that he be given a CPAP machine. *See* R. Doc. 119-3, p. 234. On January 20, 2022, a sleep study was completed and was consistent with mild obstructive sleep apnea. *See* R. Doc. 119-3, p. 212-213. A CPAP[2] machine was provided the following month. *See* R. Doc. 119-3, p. 211. In the next two months, the plaintiff's symptoms resolved, and he was sleeping better. *See* R. Doc. 119-3, p. 214 and 220.

As such, the record shows that for a large part of the time in question defendant Dr. Lavespere was not involved with the plaintiff's day to day medical care. Furthermore, nothing in the records shows that defendant Dr. Lavespere did anything to prevent or delay the plaintiff's

---

[2] The Supplemental Complaint refers to this as a VPAP device. (R. Doc. 23 at 2).

sleep study. The record shows that all or most providers seemed to be relying upon defendant Baudin to have the sleep study completed.

*Defendant Brady Baudin*

Defendant Baudin is a registered respiratory specialist. *See* R. Doc. 120, p. 1. As noted above, a Consultant Referral Form was competed on February 7, 2018, for Respiratory Therapy to evaluate the plaintiff for obstructive sleep apnea. *See* R. Doc. 119-4, p. 13. The Court has not been directed to any documentation of this evaluation but assumes the evaluation consisted of the STOP BANG Questionnaire which indicated that the plaintiff had a high risk of obstructive sleep apnea. *See* R. Doc. 119-4, p. 12. It is unclear what occurred between this time and April 10, 2019, when a provider ordered a sleep study for the plaintiff only to be informed by defendant Baudin that the plaintiff was already on the list to have a sleep study completed. *See* R. Doc. 119-3, p. 272. According to defendant Baudin, a treating physician must order sleep apnea testing. *See* R. doc. 120, p. 1. As such, sometime between February 7, 2018, and April 10, 2019, a sleep study had been ordered for the plaintiff since defendant Baudin informed the provider that the plaintiff was on the list for sleep apnea testing.

Plaintiff still remained on the list until March 3, 2020, when a provider again contacted defendant Baudin about the status of the plaintiff's sleep study. *See* R. Doc. 119-3, p. 265. Understandably, at this point COVID-19 may have begun to account for some, but not all, of the delay in obtaining the sleep study.

On October 8, 2020, the provider ordered a sleep study in the Skilled Nursing Unit at the prison. *See* R. Doc. 119-3, p. 261. On April 15, 2021, the provider contacted defendant Baudin who stated that they would try to do the sleep study in the skilled nursing unit the following week. *See* Doc. 119-3, p. 254.

The plaintiff was seen by an ENT on July 1, 2021, who recommended a sleep study and a CPAP machine. It was noted that defendant Dr. Lavespere stated that, per defendant Baudin, a sleep study machine/test would be ordered. The sleep study and an endoscopy were okayed on August 18, 2021. *See* R. Doc. 119-3, p. 244.

The endoscopy was performed on October 11, 2021. Dr. Bolk recommended a sleep study, and if the plaintiff had obstructive sleep apnea, that he be given a CPAP machine. *See* R. Doc. 119-3, p. 234. On January 20, 2022, a sleep study was finally completed by defendant Baudin and was consistent with mild obstructive sleep apnea. *See* R. Doc. 119-3, p. 212-213. A CPAP machine was provided by defendant Baudin the following month. *See* R. Doc. 119-3, p. 211.

It is clear from the records that a sleep study had been ordered for the plaintiff and that the various providers were relying on defendant Baudin to arrange the study. Defendant Baudin has offered no explanation for his failure to act which resulted in a delay of testing for several years. Without any other explanation, the Court cannot conclude that defendant Baudin's failure to act was due to anything other than deliberate indifference.

However, a delay in medical care violates the Eighth Amendment only if it results in substantial harm. Despite the long delay, the plaintiff has not alleged to have suffered substantial harm. Plaintiff alleges only that sometimes he would wake up coughing and gasping for air, and his vision was blurry. His heart rate and blood pressure had increased, and he sometimes had headaches and body aches. The plaintiff's memory and mental focus were also affected. By March 7, 2022, it was noted that the plaintiff's symptoms had resolved. *See* R. Doc. 119-4, p. 220. As such, the plaintiff did not suffer any substantial harm from the delay in testing.

Other courts have concluded the same under similar circumstances. *See Kapordelis v. Autin,* 2019 WL 7500820, (W.D. La. Dec. 16, 2019) (No "substantial harm" from the delay

where plaintiff suffered only from temporary severe headaches and an alleged loss of consciousness, did not allege that his medical condition worsened as a result of the delay, did not make a claim of any lasting complications resulting from the delay, and conceded that all pain and suffering ended when the CPAP therapy was restored); *Bolling v. Colorado Department of Correctios,* 2023 WL 2467336, (D. Colo. Mar. 2, 2023) (allegations of shortness of breath, chronic headaches, and stopping breathing several times during sleep do not constitute substantial harm); *Santana v. Watson*, 2014 WL 1803308, at *5 (S.D.N.Y. May 6, 2014) (failure to show that delay or interruption in the provision of a CPAP machine was sufficiently serious to constitute an Eighth Amendment violation where there was "no indication that [plaintiff's] health declined during the time he was without a CPAP machine, or that the temporary deprivation significantly affected his daily activities or caused him chronic or substantial pain"); *Nesmith v. Southern Health Partners*, 2012 WL 426606, at *4 (W.D. Pa. Jan. 10, 2012) (recommending dismissal with prejudice where even if plaintiff's sleep apnea was a serious medical condition, his section 1983 claim for delay in receiving a CPAP machine failed where his claims were limited to not sleeping well and occasional headaches and chest pains in the morning).

As such, there is nothing in the record to show that defendant Baudin's failure to act resulted in substantial harm to the plaintiff. Defendants are entitled to summary judgment.

## RECOMMENDATION

It is recommended that the plaintiff's Motion for Summary Judgment (R. Doc. 115) be denied, and that defendants' Motion for Summary Judgment (R. Doc. 118), be granted, dismissing plaintiff's claims with prejudice.

Signed in Baton Rouge, Louisiana, on April 17, 2024.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**